All right, wonderful to see you all today and we have our next case for Good morning, Your Honors, or close to good afternoon at this point. May I begin? Yes, sir. Okay. And before you do, how much time would you like to reserve? We'd like to reserve two minutes for rebuttal time. Very well. Go ahead, sir. May it please the Court, my name is David Birney and I have the pleasure of representing Appellant Marina C. in this matter. As this Court is aware, this case arises under the IDA, Section 504 in the ADA, and involves the lower court's failure to award Marina C. all of her reasonable attorney's fees and costs, following a letter that was sent by the School District's counsel offering certain terms for purposes of settlement. While the briefing that we filed on Marina C.'s behalf lays out a series of reasons as to why this Court should reverse the lower court's decision, for today's argument, I intend to focus on three issues that center around how Marina C. ended up receiving more favorable relief than what was contained in the School District Attorney's letter. There's a provision in the IDA that if the parent obtains more favorable relief than what's contained in a 10-day offer of settlement... Is it your position that the School District violated Pennsylvania State law in making the September 18th offer? That is one of our positions, too. It is our position that the School Districts had an obligation under the principles of cooperative federalism to obtain authority before they could even make an offer, and they failed to do that. When do school boards ever get pre-approval? I mean, what would the purpose be? Let's go to the school board and let's offer one year. School board says yes. Go to the student. Student says no. So now you've got to go back to the school board. Let's do two years. Go back to the parent. No. I mean, that just seems untenable, that you would have that kind of movement in a normal case. Well, so it's frequently the case that the parties can decide amongst themselves before it goes to the school board to resolve the case and then have the school board approve. Our position is that for a 10-day offer, you don't need to have that situation every time the school district... There is one 10-day offer, and it wouldn't be that impractical for a school district to provide authority for purposes of a 10-day offer, especially where a 10-day offer carries the owner's provisions that if a parent does not end up obtaining more favorable relief, then they are going to be barred for all of their attorney's fees from the point at which that 10-day offer was made. So for purposes of what you're saying, if it was sort of normal in-the-course back-and-forth discourse regarding negotiations, I may agree with you, but for purposes of a 10-day offer, it seems to me appropriate where the penalty is going to be something as onerous as having your attorney's fees cut off, that the school district in the first instance should go and have authority before making the offer. But that's... I mean, that's sort of... That's Bernie on law, right? I mean, there's... Where would I look to see some support for that particular situation? So I appreciate the reference to Bernie on law. However, it's standard contract law that a party needs to have the authority of their clients before they can make an offer of settlements. You need authority in order to do that. Otherwise, what you're really doing is asking the other party, you're inviting the other party to make an offer. And then when the board approves it, they are accepting the offer. On the IDEA area, isn't that what goes on? I mean, you're saying we're trying to settle an IEP disagreement with regard to placement. You're not going to go to the board and nothing will... No. So fair enough. Not every time you're going to go to the board. No, that's true. If you have a dispute regarding an IEP, not everything requires board approval. That's absolutely correct. But there are provisions where if the contract is in excess of $100, so for example, the issue of attorney's fees. If the school district, as part of their 10-day offer, is going to offer to pay for attorney's fees and costs, they're going to need some sort of approval from the board in order to have authority to do that. Okay. Well, then let's get to it. But the IDEA law doesn't say that. That's correct. The IDEA law also doesn't say lots of things. And that's sort of the point. It certainly doesn't say it needs to be an offer that specifically has board approval. Well, the IDEA is a perfect example of cooperative federalism, where what the federal government did was they created a series of requirements that the states would need to comply with if they accepted federal funding, with lots of holes and interstices that the states would get to fill. I mean, they were fitting the IDEA in the context of 50 pre-existing school codes. And the idea was not that the IDEA would simply preempt all of these pre-existing school codes. The purpose behind 5508, which is the statute that you're referring to, is to prevent fiscal waste and to promote school board accountability. And so the idea that you could create an offer without having authority, and then the school board gets to approve that, sort of eviscerates the whole point of a Rule 68. This suit was brought under the IDEA. That is correct. I think you have to, it seems to me, what law is there that says we have to look at the state education code to determine what kind of offer is made? Where is that in the IDEA? Well, so the IDEA has certain requirements, and then there are holes in terms of what the IDEA requires. And that's where the state is supposed to come in and provide information that fills in those particular holes. Let me ask you this question. Is the subsequent October 8th settlement, is that, should that play any role in our consideration? So that, Your Honor, that's a good question. Regarding our position as to whether or not Reunicy ended up receiving more favorable relief, one of the bedrock areas of law that you're supposed to look at is you're supposed to analyze whatever offer there was based on its plain terms. In the first instance, you're not supposed to go outside the four corners of the offer. And in fact, what the lower court did was the lower court looked at extrinsic evidence and imputed that extrinsic evidence into the offer. And then based on imputing facts that were not part of the offer itself, ruled that the parent had not received more favorable relief. Well, let me ask you this. The offer made, if I understand it correctly, was to pay private school tuition and transportation. Is that the totality of it? That is the totality of it. Okay. So if that's the totality, there are two things you can do. You can say, I think that I can make a reasonable inference based on what was said, what that means, or you can ask, what does it mean if there's some confusion, right? I would suggest that there's a third thing that you could do. The third thing you could do is you could say, this is a perfectly clear offer that's been made. This offer does not include pendency. This offer does not include one-on-one tutoring. This offer does not include RENAC's attorney's fees and costs. And because it doesn't include those particular provisions, I am going to reject this particular offer. However, I am going to reach back out to the school district and see if I can negotiate a better agreement, which is what in fact happens. So throughout October. So there was a rejection within 10 days? By virtue of the fact that RENAC did not respond, that under the IDA, that is the same as rejecting the offer. And that's what happens. So we rejected the offer. And I'll say this. In hindsight, I would think that the better practice, if I had to do this again, would have been to reach out to the school district within those 10 days and negotiated that agreement within those 10 days. But there's nothing in the IDA that requires us to do that. There's nothing in the IDA that says that if at some point we obtain more favorable relief, the fact that we didn't negotiate that within 10 days would then preclude us from recovery. How do you argue that it's more favorable relief if you admit that one of the three ways of looking at this was that this does cover penancy? Right? I mean, as we all sit here now, right, we don't know. Because you never asked. So I can answer that question. There's nothing in the agreement, there's nothing in the offer that mentions penancy. So what we need to do, so for our perspective, it wasn't in there. But it's a penancy part of the law. Statehood's part of the law. So imagine this situation, okay? We received this offer. As is my duty, I would have spoken to my client about the offer. Did you speak to your client within 10 days about the offer? Yes. I spoke to my client within 10 days. If you look at the motion for attorney's fees and costs that we filed, there'll be timesheets attached to that. And you will see an entry in which I spoke to my client within those 10 days. In fact, you'll see lots of entries where I spoke to opposing counsel regarding settlement. Over and over and over again. Not within those 10 days. But you'll generally get a sense of what the development of the case was through those particular timesheets. So imagine, if you will, without me disclosing attorney-client confidentialities. I spoke to Rena See. Rena See said to me, because this was not her first time involved in a due process hearing with the school district. In fact, they had had one previously. And she understood what the concept of pendency was. And she had what she would consider and what I would consider a healthy distrust of the school district based on this past due process hearing. And she said to me, Mr. Bernie, does this offer contain pendency? And I would have said, well, if you look at the current prevailing law in the Third Circuit, the answer is no. There's nothing in the Third Circuit that says that the offer to pay for tuition is sufficient to confer pendency on the private school. And in fact, the leading cases in the Third Circuit, two district court cases, would stand for the opposite proposition. In KL versus Berlin, the court found. Let me ask you a question. Sure. You're, you're, you're, I know what you're about to cite. But how about the Ninth Circuit cases? Zib, I think it's Zib. Zibby versus, that's a second, that's a Second Circuit case. Well, KD, is KD his ninth? So. I think it's KD. KD is ninth, sorry. There are, there are a series of cases that the lower court cited in, in its opinion. One case is from DC, another case is Evans, another case is from the Second Circuit. Most of those cases stand for the proposition that agreeing to pay for tuition is not enough to confer pendency. In addition to that, the school district has agreed to place the students at the school. And the term placement is a term of art. Typically in Pennsylvania, when you talk about a school district placing a child in a school or agreeing to a placement in a school, they issue something called a NURAP, a Notice of Recommended Educational Placement, which then memorializes the IEP and memorializes the placement. But, but in this instance, your, your client took the child out of the school, put him in with his distracted friends, and then moved the child again. And it was clear that this offer went to DVFS. Delaware, Delaware Valley Friends School, DVFS. Right, right. So, you know, why, why wouldn't it be reasonable to infer that that would, that that included pendency? The reason why it wouldn't be reasonable is because the school district terms it a unilateral placement. So what that, what that signals is, they are not necessarily agreeing to this as a placement. And the case law from, at least from the Third Circuit, both the KL decision, which you anticipate what I was going to say about KL, but there's also Lauren W. versus Radner, in which the only way that the court found that the private placement in that case, which was Hilltop, was the pendant placement, was based on the fact that the school board had specifically voted 8-1 to place the student at Hilltop. It was beyond simply a tuition, an agreement to pay for tuition. And that's a, that's the distinguishing factor. The school district would have been well in their rights. If we had accepted the offer, the school district, based on the current state of law in the Third Circuit, would have been well in their rights to say, pendency does not exist in the private school. They would have been well in their rights to do that. And then when we had our, this offer, we would then have been relegated to litigating whether or not pendency existed in the private school. By virtue of receiving the order that we did, we ended any uncertainty about that. So the whole question here is whether or not you are due attorney's fees because you obtained more than you would have originally received in the offer. So if we don't know what the offer constituted, right, it's open to question. Then how will you do the attorney's fees? So that, in fact, that's exactly part of the point. The part of the point is that if you don't know what the offer says, then the offer is typically construed against the drafter or the offeror. And that makes sense because they're the ones who are putting out the offer. And it's the parent who's the one who's risking giving up a lot in terms of their entire case by taking it. And so the courts have typically held that where the offer is ambiguous, the offer is construed against the offeror, not against the offeree. And under standard contract principles, you don't penalize the parent or the offeree for the drafter of the offer's ambiguities and lack of clarity. Let's move to the question. Let's assume that the offer or the settlement that she ended up with wasn't more favorable than what the pending offer was. Can you still show that she was substantially justified in rejecting the offer because there were not attorney's fees included in that offer? So the answer to that is, as you can imagine, I'm going to say yes to that question. So the answer is yes. And before I answer that question, and I will absolutely answer that question, I think in the first instance, we did obtain more favorable relief through a series of mechanisms. But getting to whether or not we're substantially justified, the answer is yes. A party who is not offered their attorney's fees and costs as part of an offer is certainly substantially justified in rejecting it. Rena C. would not have been able to afford the services of an attorney without having some measure or expectation that she would be able to obtain her attorney's fees back as part of the litigation. In fact, courts around the country have typically found as much, courts within the Third Circuit. I'm not sure I understand the statutory scheme, specifically 1450, small i, 3E, that provides for this, but it seems to provide for that. That is correct. You can be in a position where your final settlement isn't more favorable, but you can still get attorney's fees, attorney's fees and things. That's exactly correct. And the reason for that is that Congress at some point amended the IDA to include the Handicapped Children's Protection Act. And the purpose of that was to make sure that parents who cannot ordinarily afford the cost of litigation had the right to recoup their attorney's fees if they were a prevailing party. Is that where we'll call it subsection of RG came from? That is exactly where it came from. What year, do you know? What year was the HDPA passed? I don't have it off the tip of my head, but I can certainly provide it, but it's in my paperwork. Yeah. But that was absolutely part of the purpose. The Congress was very concerned about parents who already are bearing the cost of trying to provide for the living needs and the education of children with disabilities, and some children having very severe disabilities. They didn't want to add on the additional burden of being able to sue under the IDA without any hope of being able to recover their attorney's fees and costs. And so this was a critical part of the IDA. And so if a school district does not offer attorney's fees and costs as part of the offer, courts around the country recognizing that have found that because otherwise it may be a losing proposition. They may end up obtaining value as a result of an outcome, but the cost of the attorney's fees may put them at such a loss that it may end up not being worth it because they can't afford it. Well, why isn't this like Gary G. in the Fifth Circuit? You know, relatively speaking, the fees were very small at the time of the offer. The case could have been resolved. So Gary G., I would consent that Gary G. is an anomaly. The first issue with Gary G. is the Fifth Circuit held that they weren't making a blanket rule that parent is not always substantially justified in rejecting an offer that doesn't contain attorney's fees. The second thing in Gary G. that makes this distinguishable is that the parents in Gary G. received far worse relief than they would have had had they accepted the offer. Here, we did not receive worse relief. I mean, I'm going to – we're positing that we received better relief, but I understand that for purposes of this particular scenario, we're not assuming that. But at the very least, we certainly received equal relief. Again, I would argue we received more, but we weren't in the same position as Gary G. where Gary G., the parent in that case, had received less. The third thing is that when the school district made the offer, they didn't even know about Gary G.'s attorney's fees. Here, it was clear that the school district knew about our attorney's fees. And, in fact, the school district, when they did make some offer of attorney's fees months and months down the road, they simply said, it can come out of your client's compensatory education, which was really no offer at all. Judge Nygard, do you have anything? I have no questions. Okay, great. Thanks so much. We'll get you on your bus. Thank you. Thank you. Good afternoon. May it please the court, my name is Carl Romberger. I'm counsel for Colonial School District. Good afternoon. I think the answer... So, tell us why should the parent be expected to infer implied relief from an offer that doesn't expressly provide such relief? It's a very short offer, you know, and to the point, I get it. But maybe you can answer that question for me. There's a couple of things there. One is about experience with the nature of these offers that I've done in the past. But to answer your question, I think going back to basic principles, a lot of the debates that we're having today can be answered by framing the reference back to the purpose of the IDA. IDA says it's to ensure a free, appropriate public education to the child. The law is about the child, but this case is about the fees. So, keeping in mind that basic principle, and keeping in mind this court's precedent in Lima about construing ambiguous terms against the drafter, the child-centered relief that's at issue in the 10-day offer, if it's ambiguous, the favor goes to the child. It doesn't go to the school district. It doesn't go to the attorney, but to the child. So, implied pendency, so we should infer that it was a four-year offer. I think, personally, pendency, to me, it's obvious. It's in the law. The last agreement between the parties is pendent. This offer, if accepted, becomes the agreement. I think if we followed what you said, that would mean that any time an offer of placement was made, let's just keep it to a high school scenario, that if the child wasn't going to turn to 21 that year, then you'd have to imply pendency. All the way through until the parties would agree otherwise. Correct. And that was the nature of this offer. There was no condition whatsoever. That simplicity of the offer, the few words is informed by years of experience and frustration trying to use a 10-day offer effectively. No matter what we say in these offers, we will get the responses back, sometimes completely different. Send a settlement agreement with the offer, and the response is, well, we're not required to waive anything. You're denying liability. Don't send a settlement agreement. We don't know what we're agreeing to. So if we, for the moment, imply pendency, that gets us to at least four years. I know that it could go past 21 and so forth. But what about Mr. Bernie's argument that he got more favorable relief? For instance, he says that no mention of attorney's fees in the papers. We haven't talked about today, but one-on-one instruction and so forth. Sure. Well, one-to-one instruction is easy because it wasn't raised. And that bears an important point, too. While we look at the offer against what is ultimately obtained, that offer is not in a vacuum. It is done in the context of what's demanded. So Amici, for example, COPA talks about parent perspective. The only perspective we have of what's on the parent's mind is what's in that complaint notice. That complaint notice, in this case, sought tuition reimbursement, not even fronting it by the school district, but tuition reimbursement for one year. Didn't ask for transportation and made no mention of one-to-one tutoring. And as the district court found, parent had that invoice at the time and yet didn't ask for one-to-one tutoring. Nonetheless, using that broad language of tuition, because we know that there are fees involved, application fees, tuition fees, often it's a one-to-one tutoring fee, but we don't know what is involved in each specific case until we have that information. And this bears on a point for substantial justification. And I suggest that substantial justification cannot be based on something that's left unsaid. So Renecy cannot go back after the fact and say, we were substantially justified because you didn't include tutoring when we didn't even know about tutoring. That's not justification. It's certainly not substantial. Is part of your argument that they can't effectively argue substantial justification because of their failure to do anything within the 10 days? Or would you agree with Mr. Birney that if they just sit on the sidelines, that that's okay? The 10 day puts the parent attorney at peril for fees. Chooses not to respond is rejected. The consequences of that flow naturally from what occurred, both by operation of law and the fact of not accepting it. And you didn't include attorney's fees in the offer. So why would that substantial justification, even if everything else that you've said we agree with, why isn't that substantial justification to reject the offer by not accepting it? We go back to basic principles. The law requires relief for the child. The law does not entitle the attorney to a fee. But Canon says it can't get a fee until there's the judicial imprimatur. The IDA 10 day does not require fees. I do have, I've known experienced attorneys who, if the case settles quickly, don't ask for fees. So my client, I'm not going to recommend to my client to offer up what's not been demanded. But it's not required. It's not required, but it says that, he says that a parent who is a known party and is substantial justified in rejecting the offer. Right. And I don't know the source of law that says substantial justification can be found in attorney's fees that are not required under the IDA or to benefit the child. I don't understand that. That's a question we have to decide. Correct. We're asking the same question we're going to have to ask. And I hope it's not too bold to assert that those cases that find fees as a reason to reject an offer are just wrong. In fact, one of the problems with fees, unlike remedies for the child, the remedy for the child is rather fixed. Fees are not. They constantly go up. And if we were to have fees in the offer, and then we get a call saying, well, can we do this, that, and the other thing, 30 days later, more fees have been incurred, and it doesn't stop. The point of the statute... By the way, on that question, what about Daniel versus the District of Columbia? I'm not familiar with that one by name. You're not familiar with Daniel versus the District of Columbia? You said you didn't know the case on substantial justification existing by not including attorney's fees. Right. I said those cases are wrong. I should rephrase. I don't know an organic statutory source. You don't know a variety of cited cases. Well, that's a nice way to say it. I will take that expression. And I think this is a point hinted at at the Gary G case when they suggest, although they didn't rule, that fees are not grounds for rejecting an offer. And I keep coming back to this offer was very favorable to the child, would have ensured her stability in placement, continued through high school or beyond even, unless there was an agreement otherwise. It's hard, though, without your edification, from your perspective, help us, to look at what was ultimately agreed upon and the terse but apparently wholesome offer and say that they are the same or that there's not more relief that was ultimately achieved. Again, there's three points in time to bear in mind, starting with the demand, which didn't ask for one-to-one tutoring and which didn't say anything about pendency because pendency just follows. It just does. Why did the language change in the October 8th offer if that's so? Oh, I remember it well. It was a late-night negotiation with multiple parties on phone and email, and we were hammering out the terms of this order, Mr. Burney and I and my client and his client and the hearing officer. And as I noted in the briefs, to me, pendency was just a throwaway because it's already there, so that goes in. The fees, Mr. Burney believed he would get his fees as a result of the order. That's the Judicial Indefinitor under Buchanan. And then there's the one-to-one tutoring. As I said, we did not know about that at the time. We had the invoice when we went to the hearing and saw the exhibits. We were always of the mind, tuition included those costs, so that's just another. We can add it in to get this situation done. Mr. Burney's reply brief hints at the history between the parties. There was an adverse history, clearly. Colonial got this offer out within 15 days of receiving its complaint notice. There was no desire to repeat what occurred before. Colonial wanted to get this over with, get it settled for the child, and shorten the amount of fees. And when we went into this, over the years, I've always advised the client, when we do a 10-day, you also have to understand that fees were included up to that date. I now know that I was wrong in giving that guidance. But in this case, there was no denial of fees or obligation to owe those fees. What, could you tell us your view on ZBD and KD? Apparently, there would be precedent that you would want us to apply, but you heard how Mr. Burney distinguished them. Maybe you can speak to that specific point. Well, as I recall from ZBD, the distinguishing character there is that whatever the party's agreement was, there was no intent or notice from the school district to the parent that the school district wanted to bring the child back or wanted to have another placement offer, as opposed to, and I may be getting my cases backwards, I apologize, as opposed to those other cases where we agreed to place the child for one year and then we're going to issue an IEP for whatever placement. That's the two character of the cases. ZBD's on the one side and others are on the other side. But I don't think you need to go there. This court's precedent is very clear from Drinker and Riley S. on down. Once there is an agreement, the school district's certainly not going to weasel out of it. Going back to those basic principles that this is child-centered law. If the school district agreed, then that child's going to remain there until there's an agreement by the parties or an order otherwise. And that's been very clear in this court's precedent. I would just like to add, just briefly, the Miki briefs raise some good points on behalf of the school boards and the charter schools. We in this business work small bar, and it is a game of gotcha in many ways, and we need a precedent that allows us to settle these things quickly and efficiently. For the charter schools, it's even an existential threat. Some of those schools are so small, one big fee award could close the school. So I ask, whatever you do, the parties, the parents, the schools, the lawyers, and particularly the children, need to know what the rules are so we can implement agreements favorable to everyone concerned. Let me just ask you a question about substantial justification. What's the way that we should think about how to frame a test there? Because one of the troubles I have with thinking about it in this context is that someone could invoke it by having not acted. Well, and I've already said, I think one of the legal points should be, for it to be justified, it needs to be said. We can't be left guessing. But the Supreme Court in Pierce v. Underwood, and this court in Williams v. Estrue, has addressed that phrase. Granted, it was under the Equal Access to Justice Act, but it's the same phrase. And in Williams v. Estrue, it laid out three points. Whether there's a reasonable basis in fact for the idea being proposed. Second, whether there's a reasonable basis in law for the theory propounded. And third, whether there's a reasonable connection between the two. So I think here, one-to-one tutoring is no reasonable basis in fact, because it wasn't said. And then the more difficult one would be pendency. That's a matter of law in my mind. It's included. Thank you so much. Thank you. Judge Nygaard, did you have anything? No, thank you. I did not. Thank you. I just wanted to address some of the things that Mr. Romberger said while he was up here. The first is the question of whether or not this was something that the Colonial School District wanted to settle quickly. They had, and he had mentioned the gotcha game. And unfortunately, this 10-day, if you'll call it an offer, whatever it was, the district letter from September 18, 2014, became a point of gotcha against the parents. On October 1st, admittedly after 10 days, we reached out to opposing counsel to try and negotiate this. And there was ongoing negotiations in which the school district's position was moving back and forth, and there was no way for us to tether it to get a reasonable solution at these particular points. We approached them about a draft settlement agreement that they had offered. We had approached them about the original offer. We had asked them whether or not it contains pendency in a December 4th email and a December 11th email. Each time back, they came back to us and said, no, it doesn't contain pendency. We feel as though when the student was removed from Stratford Friends and placed in Delaware Valley. Is that in the record? The record? Yes. Six pages, 67 and 68 of the joint appendix. District counsel said that they no longer recognized Delaware Valley Friends School as being dependent placement. We went back and forth. We even requested a conditional dismissal order to get the case dismissed, meaning re-nascite, in order to provide the parties more time to negotiate this. And every time we approached the school district about trying to get back to the place that we thought would get this case settled, which ultimately was memorialized in the due process hearing offers at order, we were not able to get the school district to engage us. So that's one thing I wanted to address. Another thing is that the complaint does ask for these things.